J-A18025-23

2023 PA Super 185

| | | |
|---|---|---|
| IN RE:  ESTATE OF BERNARD D. RUSH, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BENJAMIN D. RUSH | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 717 WDA 2022 |

Appeal from the Order Entered May 24, 2022
In the Court of Common Pleas of Washington County Orphans' Court
Division at No(s):  C-63-OC-2020-911

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

OPINION BY LAZARUS, J.:                              **FILED:  September 26, 2023**

Benjamin D. Rush ("Benjamin") appeals from the order,[1] entered in the Court of Common Pleas of Washington County, Orphans' Court Division, dismissing his petition seeking the return of a certain piece of real estate to the Estate of Bernard D. Rush, Deceased.  Upon review, we affirm.

The Orphans' Court set forth the facts of this matter as follows:

[Bernard D. Rush ("Decedent")] died on August 1, 2020.  The Decedent's Last Will and Codicil thereto were admitted to probate and respondent Barry L. Rush [("Barry")] was [granted Letters Testamentary thereon].

Prior to [Decedent's] death, on September 12, 2019, [Barry], as agent under a Power of Attorney [("POA")], executed [a] deed on the Decedent's behalf to convey [Decedent's] home in North Strabane Township [("Property")], which included [a] professional

---

[1] This order is appealable pursuant to Pa.R.A.P. 342(a)(3), which provides that an appeal may be taken as of right from an order of the Orphans' Court Division "interpreting a will or a document that forms the basis of a claim against an estate or trust."

accounting office [that Decedent shared with Barry] to [Barry] for the agreed purchase price of $130,000.00.

[Benjamin] challenged the propriety of this conveyance in [a] petition for citation, alleging that[,] to the extent that the property was conveyed for less than its fair market value, the difference between the fair market value and the negotiated purchase price constituted a gift to [Barry], and that the conveyance of the gift exceeded [Barry's] authority under the [POA].

The court conducted a hearing on December 9, 2021, and heard testimony from [Barry] regarding the circumstances surrounding the conveyance in question. [Barry] testified that he worked with the Decedent, his father, in the accounting office located within the residence, [and] that as Decedent got older, he had moved from the residence to an assisted living facility, Presbyterian Senior Care. It was the Decedent's intention to convey the property to [Barry] for the continuity of the accounting business and to use the proceeds for the expenses of his care in the assisted living facility. Included in the Decedent's Last Will and Testament dated June 13, 2017, was a specific bequest to [Barry] of a right of first refusal to purchase the property "for its fair market value at the time of [Decedent's] death." However, subsequent to the execution of the Will, the Decedent decided to convey the property during his lifetime, since he was no longer living there, and he and [Barry] negotiated the purchase price of $130,000.00.

Attorney Susan Mondik Key[, who at the time of the hearing had been practicing law for 32 years,] testified that she had represented the Decedent in the transaction in question, and that she had previously represented the Decedent in the preparation of his estate planning documents, including the [POA] dated June 5, 2019, by which the Decedent gave [Barry] the authority to act on his behalf, including the power "to engage in real property transactions." Attorney Key further testified that she met with the Decedent alone at the Presbyterian Senior Care assisted living facility with respect to the conveyance in question. The Decedent expressed to Attorney Key his desire to convey the property to [Barry] for the negotiated purchase price[] and instructed her to prepare the deed and other closing documents. Attorney Key testified that when she offered to have the Decedent transported to the closing, or to have the necessary documents brought to the assisted living facility for his execution, the Decedent insisted that he preferred to have [Barry] execute all documents necessary for the closing as his agent under the [POA].

On September 12, 2019, the transaction was completed and the property was conveyed to Blue Heron Investments, Inc., a company co-owned by respondent, for the agreed purchase price of $ 130,000.00.

[Benjamin] offered no evidence to refute [Barry's] testimony [] or [that] of Attorney Key. [Benjamin] did not challenge the Decedent's capacity to enter into an agreement with [Barry], and did not allege any undue influence. [Benjamin] offered only the testimony of Robert J. Owen, a certified real estate appraiser, who opined that the property was worth significantly more than the agreed purchase price at the time of the conveyance. In support of Mr. Owen's testimony, [Benjamin] offered as exhibits the appraisal, the common level ratio chart[,] and the Washington County assessment for the subject property.

Orphans' Court Opinion, 1/30/23, at 3-5 (footnotes omitted).

Following briefing by the parties, the Orphans' Court entered an order on May 24, 2022, dismissing Benjamin's petition. Benjamin filed a timely notice of appeal on June 16, 2022. By order dated June 30, 2022, the Orphans' Court ordered Benjamin to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The order was docketed on July 1, 2022, with a notation that copies were mailed to both counsel on that date. *See* Docket Entries, at 3-4.

Benjamin did not file a Rule 1925(b) statement as ordered. On August 19, 2022, this Court issued a rule to show cause why his appeal should not be dismissed for failure to file the court-ordered concise statement. On August 26, 2022, Benjamin filed a response to the rule to show cause in which counsel stated that "neither the [o]rder, nor notice of the same's docketing, was ever received by" counsel. Response to Rule to Show Cause, 8/26/22, at 1. Indeed, counsel asserted that he was unaware of the existence of the Rule

1925(b) order until he received this Court's rule to show cause. Counsel indicated that, at the instruction of Orphans' Court staff, he filed a motion for an extension of time, until August 31, 2022, to file the Rule 1925(b) statement. He also prepared a Rule 1925(b) statement for filing in the event that the motion was granted.

On August 26, 2022, the Orphans' Court judge, the Honorable John F. DiSalle, personally called counsel's associate and "indicated [] that [he] planned to execute [Benjamin's] proposed order." Response to Rule to Show Cause, 9/15/22, at [2]; **see also** Order, 9/13/22 ("the court personally informed counsel that the August 26, 2022 [order] **had been signed**") (emphasis added). Judge DiSalle signed the order on August 26, 2022; however, the order was not docketed or mailed to counsel until August 30, 2022—one day before the Rule 1925(b) statement was due.[2] **See** Docket Entries, at 4. Counsel claimed that he did not receive the order until September 6, 2022, on which date he filed a facially untimely Rule 1925(b) statement. **See** Response to Rule to Show Cause, 9/15/22, at [3]. In an attempt to remedy the late filing purportedly caused by counsel's late receipt of the mailed order, counsel contacted Judge DiSalle's chambers and was advised to submit a "proposed corrective order to chambers that would retroactively permit [Benjamin's] filing of his [Rule] 1925(b) statement on the day [counsel] received the order" and that Judge DiSalle "would review and

_____

[2] August 26, 2022 was a Friday. The order was not mailed until the following Tuesday.

execute [the order granting an additional extension]." *Id.* Nevertheless, judicial staff subsequently contacted counsel,

> indicating that [Judge DiSalle] had elected [] not to execute [Benjamin's] proposed [o]rder delivered on September 9, 2022, on account of [Judge DiSalle] having personally called [] counsel's offices on August 26, 2022, to indicate his plans to execute [the original proposed order extending the time for filing the Rule 1925(b) statement until August 31, 2022].

*Id.* at [4]. Consequently, counsel prepared a second motion to extend time, which Judge DiSalle promptly denied.

In the interim, on September 8, 2022, this Court issued another rule to show cause why the appeal should not be dismissed on the basis of waiver for failure to file the Rule 1925(b) statement by the August 31, 2022 extended deadline. In response, counsel recited the above procedural history and asserted that

> **_every_** procedural problem that has arisen in the instant appeal has been attributable to problems demonstrably linked to failure(s) to follow proper procedure in filing, docketing, and mailing of crucial documents by the Court of Common Pleas of Washington County, Orphans' Court[,] and the Washington County Register of Wills; and providing appropriate notice pursuant to the . . . Local Court Rules so that all interested parties, including but not limited to [Benjamin], are afforded the appropriate due process rights in complying with . . . appellate requirements.

*Id.* (emphasis in original). On November 2, 2022, this Court issued a *per curiam* order discharging the rules to show cause, subject to review by the merits panel. *See* Order, 11/2/22.

Benjamin raises the following claims for our review:

- 5 -

1. Did the [Orphans' Court] err in finding that Barry [] acted legally pursuant to the [terms of Decedent's POA and will], and should instead have found that Barry [] exceeded the scope of the [POA] when he made a de facto gift to himself of $85,000.00 when he transferred the [Property]?

2. Did the [Orphans' Court] err in finding, based only on the testimony of counsel for the Decedent and the drafter of the [POA], that "the POA document in question expressly provides this authority [to engage in real property transactions] as well," because the [Orphans' Court] was clearly erroneous in its failure to consider the four[ ]corners of the [POA] document itself, in which the Decedent clearly and positively indicated by marking his desire to restrict Barry [] to limited gifting powers only?

3. Did the [Orphans' Court] err in failing to find that Barry['s] usage of his limited gifting power under the [POA] to transfer the [Property] was an instance of clear self-dealing, as the value of the [P]roperty changing hands (and consequent net value accruing to Barry []) was well beyond the scope of the $15,000.00 gift limit established in the [POA]?

Brief of Appellant, at 4-5.

Prior to reaching the merits of Benjamin's appeal, we must determine whether he has waived his claims on appeal for failure to timely file his Rule 1925(b) statement. Pennsylvania Rule of Appellate Procedure 1925(b) provides that a judge entering an order giving rise to a notice of appeal "may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal[.]" Pa.R.A.P. 1925(b). The rule also states that "[i]ssues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). In *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate

review, [a]ppellants must comply whenever the trial court orders them to file a [Rule 1925(b) statement]. Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." **Lord**, 719 A.2d at 309; **see also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (stating any issues not raised in Rule 1925(b) statement are deemed waived). This Court has held that "[o]ur Supreme Court intended the holding in **Lord** to operate as a bright-line rule, such that 'failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised.'" **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (en banc) (citation omitted). However, "[u]pon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental [s]tatement to be filed." Pa.R.A.P. 1925(b)(2)(i).

As set forth above, counsel asserts that he never received the court's Rule 1925(b) order, although the docket reflects that the order was mailed to both counsel on July 1, 2022. **See** Pa.R.O.C.P. 4.6 (requiring clerk of courts to provide written notice of court orders to counsel of record or unrepresented party and shall note on docket date when notice given). Generally, "a party's failure to file a Rule 1925(b) statement will [not] be excused based merely upon bald allegations that the party did not receive a [Rule] 1925(b) order." **Commonwealth v. Hess**, 810 A.2d 1249, 1255 n.9 (Pa. 2002) (citation omitted). In **Hess**, the appellant asserted that he had not received the trial court's Rule 1925(b) order. In support of his claim, he provided multiple

affidavits—including one from the prosecuting District Attorney—asserting the absence of such an order from the records and noted that the trial court's docket entries did not indicate the date and manner by which he had been served with the order, in violation of Pa.R.Crim.P. 114. The Court concluded that Hess had not been served with the order, and therefore that waiver was inappropriate. Conversely, here, the docket clearly indicates that copies of the Rule 1925(b) order were mailed to counsel on July 1, 2022, and Benjamin has provided no affidavit of either his or opposing counsel certifying that the order was not received.

Nevertheless, assuming the veracity of counsel's statements in his filings in both the Orphans' Court and this Court, counsel's failure may arguably have been excusable in light of the fact that the Orphans' Court's order denying Benjamin relief contained the reasoning underlying the court's decision. It is within a trial court's discretion to order the filing of a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b) ("If the judge entering the order giving rise to the notice of appeal [] desires clarification of the errors complained of on appeal, the judge **may** enter an order directing the appellant to file" a Rule 1925(b) statement.) (emphasis added). Given that the Orphans' Court had already authored an opinion setting forth its rationale, it may have been reasonable for counsel to assume that no Rule 1925(b) order would be forthcoming. However, counsel's subsequent failure to comply simply cannot be overlooked.

Despite having been personally advised by Judge DiSalle that the order granting an extension to file the Rule 1925(b) statement had been signed on August 26, 2022, *see* Order, 9/13/22 (stating "the court personally informed counsel that the August 26, 2022 [order] had been signed"), counsel nonetheless failed to take any steps to determine when and if the order had been filed, or to simply file the already-prepared Rule 1925(b) statement. Although the order was not filed of record until August 30, 2022—one day before the Rule 1925(b) statement was due—counsel made no effort to monitor the court's docket, or to inquire with judicial chambers, and instead waited—**for a full six days after the extension had expired**—for the order to arrive in the mail. Notably, counsel argued, in his second motion to extend time, that Benjamin

> was placed at the mercy of the U.S. Postal Service's standard mailing system, which:
>
> > i. [i]s not represented to deliver parcels in less than 24 hours; [and]
> >
> > ii. [h]as received bipartisan legislative attention for negative impacts its deliveries' timeliness have suffered in the wake of the Covid-19 pandemic[.]

Motion to Extend Time, 9/12/22, at ¶ 25(d) (footnote omitted). Counsel's acknowledged awareness of the well-documented and widely publicized issues surrounding the postal service's recent lack of efficiency renders inexcusable his failure to take any affirmative action whatsoever to ensure his client's compliance with an order **that Judge DiSalle personally advised him on August 26, 2022 had been signed that same day**.

- 9 -

We also find disingenuous counsel's assertion that he waited for the extension order to arrive in the mail before filing the Rule 1925(b) statement because "it would be ***outrageous***" for a party to file an untimely document with any court without the court first having filed an order permitting him to do so. Response to Rule to Show Cause, 9/15/22, at [3] (emphasis in original). Indeed, on September 6, 2022, counsel did just that, filing his client's Rule 1925(b) statement after the expiration of the initial extension of time, but six days before he filed the second motion for an extension on September 12, 2022. Had counsel simply filed the concise statement as soon as Judge DiSalle advised him that he had granted the extension, his client's claims would have been preserved. As it stands, we are constrained to agree with the Orphans' Court that Benjamin has waived all of his claims on appeal for failure to timely file his court-ordered Rule 1925(b) statement.[3]

Moreover, even if we were to address the merits of Benjamin's appeal, he would be entitled to no relief. Our standard of review of the findings of an Orphans' Court is deferential.

> When reviewing a decree entered by the Orphans' Court, this
> Court must determine whether the record is free from legal error

_____

[3] We acknowledge that the manner in which Judge DiSalle and his staff addressed counsel's requests for extension—particularly the *ex parte* telephone call—are somewhat unorthodox, and we would caution the court to refrain from *ex parte* communications with litigants or their counsel. It is also apparent that there are issues with the filing, docketing, and mailing of documents by the Washington County Register of Wills that require addressing. Nevertheless, we decline to find that a breakdown in court's operations occurred, as it was ultimately counsel's own inaction that resulted in the waiver of his client's claims on appeal.

and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (en banc).

In his opinion dated January 30, 2023, Judge DiSalle set forth his sound

reasoning as follows:

Based on its assessment of the testimony and determination of the credibility of the witnesses, the [court] found that [the] real estate transaction in question was not a gift made by [Barry] to himself, but the execution of the Decedent's desire to sell the real estate to [Barry] for an agreed price, using the authority of the [POA]. Decedent gave express instructions to his attorney to complete the transaction in this manner and there was no evidence offered by [Benjamin] to the contrary. . . .

[Benjamin's] case is based on his attempt to characterize the transaction as a gift made by [Barry] to himself, to the extent that the appraised value of the property exceeded the actual consideration. [Benjamin] admitted that, had the Decedent opted to sign the deed himself, instead of utilizing the convenience of having [Barry] execute the documents on his behalf, he could raise no issue with the transaction. The court did not find [Benjamin's] argument compelling. There was no evidence that this real estate transaction was [a] gift or a partial gift, or that the Decedent intended the conveyance to be a gift to [Barry]. [Benjamin's] entire claim is based on the disparity of the fair market value of the real estate and the actual consideration paid for the conveyance, as agreed by the Decedent and [Barry]. [Benjamin] did not challenge the Decedent's capacity to enter into the transaction, or his intent and willingness to sell the real estate to [Barry], for the agreed purchase price of $130,000.00. The fact that the Decedent chose to facilitate the transaction through the authority conferred upon his agent, who was also the grantee, did not convert the transaction from a *bona fide* sale into a gift.

Section 5603(i) of the Probate, Estates and Fiduciary [("PEF")] Code expressly confers upon a duly appointed agent the "power

- 11 -

to 'engage in real property transactions'" and to "acquire or dispose of real property (including the principal's residence) or any interest therein." The [POA] document in question expressly provides this authority as well. The testimony was clear and uncontroverted that the Decedent [] instructed Attorney Key to complete the transaction [] via the authority vested in his agent under the [POA], and that [Barry] agreed to use his authority as agent as instructed.

> "Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so."

> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking.

> ***Traver v. Reliant Senior Gore Holdings, Inc.***, 228 A.3d 230, 286 (Pa. Super. 2020)[.]

Based on the testimony and the court's assessment of credibility, the [court] found that [Barry] was not making a discretionary gift to himself under the POA, but rather, was following the express instructions of the Decedent by executing all of the documents as the Decedent's duly appointed agent, in order to complete the real estate transaction. The Decedent maintained control of the transaction, entered into an agreement for the purchase price for his property, and gave instructions to his [a]ttorney and [Barry], as his agent, for the consummation of the closing, as testified to by Attorney Key. That the Decedent did not personally attend the closing or execute the documents is of no moment. The [PEF] Code specifically provides that an agent charged with the power to engage in real property transactions includes the authority to "exercise all powers with respect to real property **that the principal could if present**." [20 Pa.C.S.A. § 5603(i)(6) (emphasis added by Orphans' Court).] Based on the factual findings of the [court] and the law of principal and agent, there is no merit to appellant's claim for relief.

Orphans' Court Opinion, 1/30/23, at 6-8 (footnotes omitted).

Here, the Orphans' Court's findings of fact are all supported in the record, and we can discern no error of law or abuse of discretion, where Decedent's capacity to enter into the transaction was unchallenged and Barry utilized the POA merely as a matter of convenience at the express direction of Decedent. Accordingly, we would, in the alternative, affirm on the basis of Judge DiSalle's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2023